# TAKEOVER AGREEMENT

THIS AGREEMENT (hereinafter referred to as the "AGREEMENT") is made and entered into by and between the United States Department of Agriculture, Agricultural Research Service (hereinafter referred to as the "GOVERNMENT") and Carolina Casualty Insurance Company (hereinafter referred to as the "SURETY") as of the "Effective Date" set out in paragraph 29:

WHEREAS, on October 1, 2003, the GOVERNMENT and Grace & Naeem Uddin, Inc. (hereinafter referred to as the "CONTRACTOR") entered into Contract No. 50-3K15-3-3600, including any amendments, optional.items, changes, or modifications thereto, and which is attached hereto and incorporated by reference as Exhibit "A," (hereinafter called the "CONTRACT"), for the construction of a new laboratory facility known as the Subtropical Horticulture Research Center ("SHRC"); and

WHEREAS, as a condition precedent to commencing work under the CONTRACT, the GOVERNMENT, in accordance with the CONTRACT, required the CONTRACTOR to post and the SURETY did post SURETY'S Payment Bond No. 089013, dated October 14, 2003, in the amount of $6,958,615.48, and Performance Bond No. 089013, dated October 14, 2003, in the amount of $6,836,182.00, collectively, the "BONDS," true and correct copies of which are attached hereto as Exhibits "B" and "C," respectively; and

DEFENDANT'S EXHIBIT G
ALL-STATE LEGAL

WHEREAS, by letter dated August, 2, 2005, a copy of which is attached hereto and incorporated herein by reference as Exhibit "D," the GOVERNMENT has determined that the CONTRACTOR is in default and has terminated for default the right of the CONTRACTOR to proceed under the CONTRACT; and

WHEREAS, the GOVERNMENT thereafter made demand upon the SURETY to fulfill its obligations under the BONDS; and

WHEREAS, the GOVERNMENT desires to effect the completion of the work covered by the CONTRACT in an expeditious manner to avoid the delay and inconvenience of awarding a new contract to complete the work covered by the CONTRACT; and

WHEREAS, as a measure of cooperation with the GOVERNMENT and as a measure to minimize costs, the SURETY is willing and desires to takeover the CONTRACT in accordance with the terms of this AGREEMENT and the requirements, terms, and conditions of the CONTRACT; and

WHEREAS, pursuant to the Performance Bond, the SURETY is willing to cause the work required under the CONTRACT to be completed through the SURETY'S Completing Contractor or Construction Manager in accordance with the provisions of this AGREEMENT and the requirements, terms, and conditions of the CONTRACT provided that in so doing the SURETY will receive the contract balances as hereinafter set forth.

NOW, THEREFORE, in reliance upon the mutual covenants, promises, and undertakings set forth herein and intending to be fully and legally bound, the parties hereto agree as follows:

1) The Surety hereby undertakes and agrees to cause the performance of all work and obligations of the CONTRACTOR under the CONTRACT and any modifications thereto not presently completed or fulfilled, including the correction and repair of any defective work performed by the CONTRACTOR. The SURETY agrees to be bound by the CONTRACT and to perform in accordance with the requirements, terms, and conditions of the CONTRACT. All of the CONTRACTOR'S obligations and liabilities to the GOVERNMENT under the CONTRACT, and under the Bonds of the CONTRACTOR and SURETY, shall remain unimpaired by this AGREEMENT, and the CONTRACTOR shall not be released therefrom.

2) The GOVERNMENT hereby recognizes that the SURETY will takeover the CONTRACT, and the SURETY will be identifying or has identified competitively a construction contractor who is acceptable to the SURETY and the GOVERNMENT, who is ready, willing, and able to perform and complete all of the work required to be performed under the terminated CONTRACT, all in accordance with the requirements, terms, and conditions of the CONTRACT. Except as otherwise provided in this AGREEMENT, the SURETY is entitled to all rights, title and interest of the CONTRACTOR in and to the CONTRACT in all respects as if the SURETY were the original party to the CONTRACT. It is expressly understood and agreed that the GOVERNMENT shall in no way be bound to the Completing Contractor or Construction Manager or to any other contractor by the terms of this AGREEMENT. However, the GOVERNMENT shall recognize the Completing Contractor or Construction Manager as the

SURETY'S agent for the purpose of administering and constructing the SHRC and Renovation of Building 63. In the event the Completing Contractor or Construction Manager is unable to perform, SURETY understands that it remains fully liable for any resulting damages to the GOVERNMENT.

3) The SURETY shall be responsible for replacing or correcting any and all defective work in place that was performed by the CONTRACTOR without any equitable adjustment to the CONTRACT price to the extent that the work was not already approved by the GOVERNMENT. In addition, the SURETY shall be responsible, without further charge to the GOVERNMENT, for ensuring the condition, maintenance, and protection of all existing on-site materials and equipment. Any additional costs incurred by the SURETY associated with defective work, existing on-site material and equipment, or any such matters which can be attributed to performance of work by the CONTRACTOR shall be borne by the SURETY, including latent defects.

4) The adjusted Contract price, including all modifications and change orders thereto as of this date is $6,958,615.48 and as of this date payments have been made to CONTRACTOR by the GOVERNMENT in the amount of $3,458,178.56 leaving a contract balance of funds in the amount of $3,500,436.92 which includes $64,852.94 in retainage. The GOVERNMENT has issued ten (10) modifications to the contract totaling $122,433.00.

5) The Government and the Surety agree that there are no unpaid earnings owed to the CONTRACTOR. Notwithstanding the aforesaid, the Government, upon execution of this

AGREEMENT, shall pay to the Surety Requisition 17 in the amount of $189,865.24, and upon so doing said sum shall be deducted from the Contract balance.

6) The Surety shall also pay such additional sum as may be required to satisfy outstanding payment obligations to subcontractors and suppliers who have valid Payment Bond claims for work or material provided prior to the termination of the Contractor.

7) In accordance with the terms of the CONTRACT, the GOVERNMENT shall pay direct to the SURETY the unpaid balance of the CONTRACT, plus or minus any approved change order additions or deletions to which the SURETY may become entitled, as well as any amounts to which the CONTRACTOR is already entitled but has not yet been paid; subject, however, to the following conditions and limitations:

a) The unpaid earnings of the CONTRACTOR, including retained percentages and progress estimates for work accomplished before termination, shall be subject to debts due the GOVERNMENT by the CONTRACTOR, except to the extent that such unpaid earnings may be required to permit payment to SURETY of its actual costs and expenses incurred in the completion of the work, exclusive of its payments and obligations under the payment bond given in connection with the CONTRACT.

b) This AGREEMENT shall not waive or release the GOVERNMENT'S right to claim liquidated damages for delays in completion of the work, except to the extent that such delays, if any, may be excused under the provisions of the CONTRACT; and SURETY is likewise

entitled to such additional compensation, equitable adjustment, or time extensions as such is provided under the original Contract Documents.

c) In no event shall SURETY be entitled to be paid any amount in excess of its total expenditures necessarily made in completing the work and discharging its obligations under the CONTRACTOR'S payment bond. Furthermore, payments to the SURETY to reimburse it for discharging its liabilities under the payment bond shall be only on authority of (i) Mutual agreement between the GOVERNMENT, the DEFAULTING CONTRACTOR, and the SURETY, (ii) Determination of the Comptroller General as to the payee and amount, or (iii) Order of a court of competent jurisdiction.

8) The SURETY shall maintain separate records and accounts covering all costs incurred and expenditures made by it in completing the work under the CONTRACT. The SURETY shall make such records and accounts and supporting vouchers available for inspection and verification by the Contracting Officer, the Comptroller General, or other authorized representatives of the GOVERNMENT, until the expiration of three (3) years from the date of final payment under the CONTRACT.

9) The SURETY agrees that nothing herein contained shall be construed as constituting an acceptance by the GOVERNMENT of the work heretofore performed by the CONTRACTOR or as modifying or limiting the liability or obligations of the SURETY to the GOVERNMENT under the BONDS.

10) Subject to Surety's and Contractor's rights reserved pursuant to paragraph "7" herein, the Surety shall protect and indemnify the Government and hold it harmless from any claims against it by the Contractor or any of its creditors claiming a right to the Contract balances paid or to be paid to the Surety.

11) Subject to paragraph "7" herein, the Surety agrees that its Performance and Payment Bonds numbered 089013 will remain in effect for claims against the Surety for liquidated damages, latent defects and as a consequence of any liens held by Contractor and/or Subcontractors for labor or material costs as required by the FAR that result from completed work performed by the Contractor prior to August 2, 2005.

12) The CONTRACT, Amendments, and all modifications thereto are incorporated into this AGREEMENT. This AGREEMENT contains the entire agreement between the parties and supersedes any and all prior agreements, arrangements, and/or understandings between the parties. The parties agree to address issues pertaining to completion of the CONTRACT work during the course of CONTRACT performance. The Parties agree to act in good faith to promptly and fairly address such issues.

13) This AGREEMENT is the joint product of the parties hereto and shall not be construed more strictly against one party by virtue of said party's participation in the drafting of its terms and conditions. Further, the SURETY and GOVERNMENT warrant that each has the power and authority to execute this AGREEMENT and that this AGREEMENT has been signed by an officer or duly authorized representative of the SURETY and GOVERNMENT.

14) It is further agreed that this AGREEMENT is solely for the benefit of the parties hereto and shall not create any rights in any person not a party hereto, or in any way increase the rights of third persons, or increase the obligations of any party hereto to any third person, or increase the liability or obligations of the Surety under the bonds.

15) All payments and notices to SURETY shall be delivered to SURETY at the following address:

Monitor Surety Managers, Inc.
325 Columbia Turnpike
Suite 203
Florham Park, NJ 07932

16) Administration and inspection of the project will remain with the GOVERNMENT and its agents/engineers in accordance with the terms of the original CONTRACT. Should the SURETY select a Completing Contractor or Construction Manager to complete the performance of the Contract on behalf of the SURETY, such Completing Contractor or Construction Manager shall prepare and submit on behalf of the SURETY the payment requisitions to Obligee as required under the CONTRACT, and shall be authorized to take such other acts on behalf of the SURETY as may be necessary for the administration and performance of the Contract.

17) Insofar as they comply with the provisions of the CONTRACT and insofar as their title and ownership are vested in the GOVERNMENT as the result of payments made by the GOVERNMENT for progress made by the CONTRACTOR, the GOVERNMENT agrees that all

materials, appliances and plants presently on the project site are available to SURETY and its designated independent contractors without cost for use in the completion of the remainder of the CONTRACT.

18) The GOVERNMENT acknowledges that SURETY, in entering into this AGREEMENT does not acknowledge the validity of the GOVERNMENT'S termination of the CONTRACTOR'S CONTRACT, the assessment of liquidated damages by the GOVERNMENT, or any other action taken by the GOVERNMENT, except as expressly provided herein. Furthermore, in entering into this AGREEMENT, SURETY does not thereby waive, prejudice, or in any way adversely affect any claim that it, as SURETY, or the CONTRACTOR might have against the GOVERNMENT all of which are expressly reserved.

19) The GOVERNMENT agrees that it will give SURETY notification of any problems that occur in the completion of the CONTRACT.

20) SURETY and the GOVERNMENT agree, all prior rights, equitable liens and rights to subrogation that would be the United States', the laborers' or materialmen's or the CONTRACTOR'S under the CONTRACT or at law or equity, as well as SURETY'S own rights dating back to the execution of the performance and payment bonds, including, but not limited to those rights and remedies that may accrue during the completion of the CONTRACT are reserved. No waiver of such rights is agreed to or implied or intended regardless of any provisions of this takeover AGREEMENT to the contrary.

21) Except as modified by this AGREEMENT, all the terms and conditions of the original CONTRACT shall be and remain the same, and shall remain in full force and effect.

22) With the execution of this AGREEMENT, the SURETY contemplates entering into a Contract with either a Completing Contractor or Construction Manager to complete the work on behalf of the SURETY. The parties contemplate the completion of the work for the new SHRC within 270 calendar days, and completion of Renovation of Building 63 within 105 calendar days, following a Notice to Proceed issued by the GOVERNMENT. The GOVERNMENT hereby grants a time extension: the new completion date will be established based on the new Notice to Proceed date and the 270 calendar days of work to be performed to complete the Subtropical Horticultural Research Center, and 105 calendar days of work to be performed to complete the Renovation of Building 63, both located at the U.S. Department of Agriculture, Agricultural Research Service, Subtropical Horticultural Research Station, Miami, Florida.

23) It is understood and agreed that this AGREEMENT and the specific documents referenced herein constitute the whole of the understanding, discussion and agreements by and between the parties, and the written or oral discussions prior to the effective date hereof shall not in any way vary or alter the terms of this AGREEMENT.

24) This AGREEMENT shall not in any way be amended or modified without the written consent of both the SURETY and the GOVERNMENT.

25) This AGREEMENT shall extend to and be binding upon the parties hereto and their respective successors and assigns.

26) The preamble or recitals set forth above are part of this AGREEMENT. This AGREEMENT may be executed in three original counterparts.

27) The parties hereto have voluntarily executed this AGREEMENT based upon their independent investigations. The provisions of the AGREEMENT shall be applied and interpreted in a manner consistent with one another so as to carry out the purpose and intent of the parties, but if for any reason any provision is unenforceable or invalid, such provisions shall be deemed severed from the AGREEMENT and the remaining provisions shall be carried out with the same force and effect as if the severed portion had not been a part of this AGREEMENT.

28) The Effective Date of this AGREEMENT is the date the AGREEMENT is signed by all parties.

IN WITNESS HERETO, all parties to this AGREEMENT have caused to be set their hands and seals the day and year indicated.

**UNITED STATES DEPARTMENT OF AGRICULTURE**

Date Signed: ____________________ By: ______________________________________

Joan M. Baker

Attest: ________________________ Title: Contracting Officer

**CAROLINA CASUALTY INSURANCE COMPANY**

Date Signed: ____________________ By: ______________

Troward G. Wells, Jr.

Attest: ________________________ Title: Surety Claim Attorney