GRACE &
NAEEM UDDIN, INC.
CONSULTING ENGINEERS
CONSTRUCTION MANAGERS
GENERAL CONTRACTORS
BUILDING INSPECTORS

November 7, 2007

VIA CERTIFIED MAIL/RETURN RECEIPT

Ms. Regina M. Herchak
Contracting Officer
U.S. Department of Agriculture, ARS, AFM, Facilities Division
Facilities Contracts Branch
5601 Sunnyside Ave., Mail Stop 5124
Beltsville, MD 20705

**RE: GRACE AND NAEEM UDDIN, INC. / USDA - CERTIFIED CLAIM FOR TERMINATION COSTS AND EXPENSES PURSUANT TO 41 U.S.C.A. SECTION 605.**

Dear Ms. Herchak:

Enclosed please find the Claim Certification of Grace and Naeem Uddin, Inc.'s Claim for Termination Costs and Expenses pursuant to 41 U.S.C.A., Section 605. The Claim Certification certifies the claim received by your office on or about October 15, 2007 and dated on or about October 12, 2007. I have enclosed a courtesy copy of the claim that was originally submitted for your files.

Sincerely,

NAEEM UDDIN, P.E.
Vice President Grace and
Naeem Uddin, Inc.

5532 NW 72nd Avenue, Miami, FL 33166
Tel: (305)887-6227 Fax(305)887-6228
Email: GNUINC@BELLSOUTH.NET

EXHIBIT
"J"

7002 0860 0000 3503 7287

U.S. Postal Service
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To Ms. Regina M. Herchak (Contracting Officer
U.S. Department of Agriculture, ARS, AFM
Street, Apt. No.; or PO Box No. 5601 Sunnyside Ave. Mail Stop 5124
City, State, ZIP+4 Beltsville, MD 20705

PS Form 3800, April 2002 See Reverse for Instructions

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ms. Regina M. Herchak
Contracting Officer
U.S. Department of Agriculture
ARS, AFM, Facilities Division
Facilities Contracts Branch
5601 Sunnyside Avenue.,
Mail Stop 5124
Beltsville, MD 20705

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature
X Mark Shu[illegible] ☐ Agent ☐ Addressee

B. Received by (*Printed Name*) M[illegible] C. Date of Delivery 11/9/07

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

NOV 9 2007 USPS

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☒ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number
*(Transfer from service label)* 7002 0860 0000 3503 7287

PS Form 3811, February 2004 Domestic Return Receipt 102595-02-M-1540

CLAIM CERTIFICATION

Pursuant to 41 U.S.C.A., Section 605, I certify that the enclosed claim dated on or about October 12, 2007 for wrongful termination costs and expenses regarding the Subtropical Horticultural Research Center is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

NAEEM UDDIN, P.E.
Vice President Grace and
Naeem Uddin, Inc.

STATE OF FLORIDA )
: SS
COUNTY OF MIAMI-DADE )

Before me personally appeared Naeem Uddin, who is personally known to me/produced identification (type of identification produced ____________) and who after being duly sworn executed the foregoing instrument and says that the foregoing information is true and correct.

Witness my hand and official seal this 6 day of November, 2007.

Notary Public
State of Florida

My Commission Expires:

Notary Public State of Florida
Mayra C. Orozco
My Commission DD559403
Expires 06/01/2010

GRACE & NAEEM UDDIN, INC.
CONSULTING ENGINEERS
CONSTRUCTION MANAGERS
GENERAL CONTRACTORS
BUILDING INSPECTORS

October 12, 2007

VIA CERTIFIED MAIL/RETURN RECEIPT
Receipt No. 7004-2890-0000-9131-3083

Ms. Regina M. Herchak
Contracting Officer
U.S. Department of Agriculture, ARS, AFM, Facilities Division
Facilities Contracts Branch
5601 Sunnyside Ave., Mail Stop 5124
Beltsville, MD 20705

RE: GRACE AND NAEEM UDDIN, INC. / USDA - CERTIFIED CLAIM FOR TERMINATION COSTS AND EXPENSES PURSUANT TO 41 U.S.C.A. SECTION 605.

Dear Ms. Herchak:

This letter constitutes GNU's monetary claim pursuant to the Contract Disputes Act of 1978, 41 U.S.C.A., Section 605, for costs and expenses incurred by GNU as a consequence of its wrongful termination by the USDA. Enclosed please find GNU's certification of its claim pursuant to 41 U.S.C.A., Section 605 (c)(1).

On or about October 1, 2003, GNU entered into a contract, formally known as Contract Number 50-3K15-3-3600, with the USDA pursuant to which GNU would provide labor, materials, equipment and services necessary for the construction of a facility commonly known as the Subtropical Horticulture Research Center (hereinafter "PROJECT"), located in Miami-Dade County, Florida.

An Equal Opportunity Employer
5532 N.W. 72nd Avenue · Miami, Florida 33166 · (305) 887-6227 · Fax (305) 887-6228
E-MAIL: GNUINC@BELLSOUTH.NET

Pursuant to the contract, the USDA was required to provide GNU with plans and specifications that detailed the work required for the construction of the Project. However, the plans and specifications provided to GNU by the USDA were deficient with respect to several critical aspects of the Project.

For example, on or about March 15, 2004, GNU raised issues and concerns relating to the plans and specifications in a meeting with the USDA and Jacobs Facilities, Inc. (hereinafter "JACOBS"), the Project Architect. Among the issues raised by GNU was that no available window system satisfied all of the requirements included in the plans and specifications.

GNU hired a consultant to determine possible solutions to the problems it faced with the window system. The USDA and JACOBS chose a window system from five options provided by GNU's consultant. The selected window system required GNU to modify an existing window system and seek Miami-Dade County approval prior to installing the new window system on the Project.

The required modification and Miami-Dade County approval of the window system delayed the Project. Additionally, the required modification and Miami-Dade County approval of the window system added to the cost of the Project.

The USDA was notified of the increased time and costs associated with the required modification and Miami-Dade County approval prior to selecting the window system.

Pursuant to the Federal Acquisition Regulations, GNU was entitled to a change of contract price and extension of contract time resulting from the window system modification.

On or about February 2, 2005 GNU submitted a Request for Change Order for a time extension of 149 days and additional costs associated with additional work required to modify the window system. A copy of the Request for Change Order is attached hereto as EXHIBIT "A".

In addition to the delays caused by the window system, GNU suffered additional delays due to ambiguous plans and specifications. The problems GNU experienced resulting from the

plan and specification deficiencies include but are not limited to:

a. The Roof System
b. Roof Deck Design
c. Acid Piping
d. Power to the Lift Stations
e. The Layout of Sewer Mains
f. The Finish Floor Elevation

GNU submitted other change orders and requested other time extensions that the USDA declined.

With regard to the roof, the Plans and Specifications mandated requirements for a roofing system that could not be satisfied by any existing products.

Moreover, the Plans and Specifications included a roof deck design that did not satisfy wind pressure requirements. Apart from the roof deck, the plans and specifications included instructions for the installation of acid piping that required numerous revisions. Additionally, the plans and specifications did not properly specify how GNU was expected to supply power to the lift stations. Finally, the plans and specifications for the sewer main conflicted with existing utilities and landscaping at the PROJECT and the plans and specifications were deficient with respect to the finish floor elevation.

Apart from these major issues which justify the time extensions, other issues should also be mentioned. For example, after identifying many of the design issues, GNU suggested that a team be established to cure the deficiencies and assist in the successful completion of the project. This suggestion was ignored by the owner and its representative.

Additionally, GNU hand delivered Time Impact Analyses to the USDA and provided copies to additional representatives of the USDA on Project. GNU thereafter received Show Cause letters regarding alleged delays. After waiting months for a response to the TIAs, GNU was informed that the TIAs were not in the USDA's possession and it would be required to resubmit the TIAs. In short, the process for handling the TIAs appeared as flawed as the results it produced.

Furthermore, the owner delayed payment to GNU and withheld retainage without a contractual basis or cause.

GNU requested 496 days due to the insufficient plans and specifications on the Project. (149 days due to the window system and an additional 347 days related to other issues).

GNU was wrongfully terminated from the Project on or about August 2, 2005, largely because of the scheduling issues and alleged untimely performance. The USDA proceeded with termination despite notice from Monitor Surety Managers, Inc., on behalf of CAROLINA CASUALTY of AMERICA, that this would cause unnecessary delays to the PROJECT. See Exhibit "B." In fact, the cost to complete the Project increased due to the USDA Contracting Officer's decision to terminate GNU and the time to complete the Project was increased due to the USDA decision to terminate GNU.

After the USDA terminated GNU, CAROLINA CASUALTY of AMERICA entered into a Takeover Agreement with the USDA. An unexecuted copy of the Takeover Agreement is attached hereto as EXHIBIT "C." Upon information and belief this is an accurate copy of the actual agreement between CAROLINA CASUALTY of AMERICA and the USDA and the USDA has a copy of the actual agreement.

As a result of the termination and the time over agreement, GNU is liable to CAROLINA CASUALTY of AMERICA through an indemnification agreement. The indemnification agreement between GNU and CAROLINA CASUALTY of AMERICA obligated GNU to indemnify CAROLINA CASUALTY of AMERICA for any costs that exceeded the original contract price plus approved change orders. A copy of the indemnification agreement is attached hereto as EXHIBIT "D."

CAROLINA CASUALTY of AMERICA secured new contracts to finish the work remaining to close out the Project, after the USDA refused to allow GNU to complete the work pursuant to the surety's request. As a consequence, CAROLINA CASUALTY of AMERICA was forced to pay higher prices under new and revised subcontract agreements between SURETY and subcontractors. You are aware of these costs. Moreover, the time to complete the Project was extended as a consequence of the wrongful termination, also adding to the increased costs.

The USDA's failure to approve time extension requests and change order requests, the decision to terminate GNU and the wrongful grounds for termination are all material breaches of the contract.

GNU is liable to CAROLINA CASUALTY of AMERICA for reasonable costs in excess of the contract amount pursuant to the attached EXHIBIT "D." As of the date of this claim, GNU has paid one million six hundred fifty six thousand sixty one dollars and fifty cents ($1,656,061.50) to CAROLINA CASUALTY OF AMERICA and its representative, Surety Construction Consultants, Berkley Regional Insurance Co. and A2 Group, Inc. pursuant to the excess costs incurred by the USDA as a result of the wrongful termination. A copy of the checks GNU has paid to CAROLINA CASUALTY OF AMERICA and SURETY CONSTRUCTION CONSULTANTS are attached hereto as EXHIBIT "E."

Based on the foregoing, GNU requests that one million six hundred fifty six thousand sixty one dollars and fifty cents ($1,656,061.50) be paid as compensation for the excess amounts GNU was forced to pay as a result of the USDA'S wrongful termination.

The completion work remains incomplete. As a result, GNU reserves its right to amend the amount of its claim for monetary damages incurred subsequent to the submission of this claim.

Sincerely,

Naeem Uddin, P.E.
Vice President
Grace and Naeem Uddin, Inc.

NU:mco
Cc: David Elder, Esq.

NAEEM UDDIN, INC.
CONSULTING ENGINEERS
CONSTRUCTION MANAGERS
GENERAL CONTRACTORS
BUILDING INSPECTORS

# Change Order Request

Detailed, Grouped by Each Number

0327 USDA Subtropical Horticulture Research St Project # 0322 Grace & Naeem Uddin, Inc.
13601 Old Cutler Road, Miami, FL 33158 Tel: 786-293-8746 Fax: 786-242-4809

Change Order Request: 034 Date: 5/10/2004

To: Faith McNamee
United States Department of Agriculture
5601 Sunnyside Ave., Stop 5124
Beltsville, MD 20705-5124

From: Naeem Uddin, P.E.
Grace & Naeem Uddin, Inc.
5532 NW 72nd Ave, Miami, FL 33166

| Description | Category | Status |
|---|---|---|
| Window System Changes | Direct Cost | Sent |

| Reference | Required By | Days Req | Amt Req |
|---|---|---|---|
| | 2/16/2005 | 149 | 356,660 |

Notes

See Breakdown of cost for more information.

This proposal is based solely on the usual cost elements such as labor, material, and normal markups and does not include any amount for additional changes in the sequence of work, delays, disruptions, re-scheduling, extended overhead associated with the unforseen delays or disruptions, overtime, acceleration, and/or impact costs. The right is expressly reserved to make claim for any and all of the above items prior to final settlement of our agreement.

This proposal must be accepted within 10 days, after which time it will be subject to escalation. We are currently requesting a time extension of 149 days in conjunction with this change proposal.

| PCO No | Date | Reference | Amt Prop | Days Req | Category | Reason |
|---|---|---|---|---|---|---|
| Description | | Notes | | | | |
| 039 | 8/31/2004 | MS Word Documents: GEN-LTR-057 - Generic Vendor Letter | 356,660 | 149 | Change Order | Engineering Omission |
| Window System Changes | | | | | | |

EXHIBIT "A"

ALL-STATE LEGAL

Approved By:

Signature ____________ 2/1/05

Name ____________ Date

Detailed change order request grouped by each number.

Contract Number: 50-3K15-3-3

Contractor: Grace & Naeem Uddin, Inc.

Change Order No. 34 Description: Window System Chnages

PRIME CONTRACTOR'S WORK

| | | |
|---|---|---|
| 1 | Direct Materials = | $28,252.26 |
| 2 | Sales Tax on Materials @ 7% of Line 1 = | $1,977.66 |
| 3 | Direct Labor = | $123,612.13 |
| 4 | Insurance, Taxes, and Fringe Benefits = | $42,909.05 |
| 5 | Rental Equipment = | $8,132.55 |
| 6 | Sales Tax - Rental Equipment @ 7% of Line 5 = | $569.28 |
| 7 | Subtotal (Lines 1-6) = | $205,452.92 |
| 8 | Overhead & Profit @ 30% of Line 7 = | $61,635.88 |
| 9 | Subtotal (add Lines 7-8) = | $267,088.80 |

SUBCONTRACTOR'S WORK

| | | |
|---|---|---|
| 10 | Direct Materials = | $70,250.00 |
| 11 | Sales Tax on Materials @ 7% of Line 10 = | $0.00 |
| 12 | Direct Labor = | $0.00 |
| 13 | Insurance, Taxes, and Fringe Benefits = | $0.00 |
| 14 | Rental Equipment = | $0.00 |
| 15 | Sales Tax - Rental Equipment @ 7% of Line 14 = | $0.00 |
| 16 | Subtotal (Lines 10-15) = | $70,250.00 |
| 17 | Overhead @ 5% | Included |
| 18 | Subtotal (add Lines 16-17) = | $70,250.00 |
| 19 | Profit @ 5% | Included |
| 20 | Subtotal (add Lines 18-19) = | $70,250.00 |

SUMMARY

| | | |
|---|---|---|
| 21 | Prime's Work (from Line 9) = | $267,088.80 |
| 22 | Sub's Work (from line 20) = | $70,250.00 |
| 23 | SUBTOTAL (add lines 21-22) = | $337,338.80 |
| 24 | Prime's Overhead on Sub @ 10% of line 16 = | $7,025.00 |
| 25 | Prime's Profit on Sub @ 10% of line 16 = | $7,025.00 |
| 26 | SUBTOTAL (add lines 23-25) | $351,388.80 |
| 27 | Prime's Bond Premium @ 1.5% of line 26 = | $5,270.83 |
| 28 | TOTAL Cost | $356,659.63 |

Estimated time extension (if any and justification):
149 additional days are requested, in order to incorporate additional work.

Naeem Uddin, P.E. Project Manager
Signature and Title of Preparer

383 Main Street
Suite 202
Chatham, NJ 07928
Telephone: 973-635-2400
Facsimile: 973-635-1352

August 10, 2005

USDA
Administrative and Financial Management
5601 Sunnyside Avenue
Beltsville, MD 20705-5100
Attn: Joan M. Baker, Contracting Officer

| | | |
|---|---|---|
| Re: | Bond No.: | 089013 |
| | Principal: | Grace & Naeem Uddin Inc. |
| | Obligee: | US Department of Agriculture |
| | Project: | Contract #50-3K15-3-3600 Construction of the subtropical Horticulture Research Center Laboratory Facility |

Dear Ms. Baker:

This is to acknowledge receipt of your August 8, 2005 letter, received on August 9, 2005 advising us that "the USDA intends to proceed with the termination and invoke the bond and is in the process in providing documentation to Monitor Surety managers, Inc. as requested in your letter of July 25, 2005".

In accordance with your request, we spoke on August 9, 2005. At that time, we informed you that we will be conducting an investigation into the default and project status through the use of a construction consultant. Please be advised that we have retained Bob Golden of Surety and Construction Consultants. Mr. Golden's address and telephone number is as follows:

5444 Bay Center Drive, Suite 224
Tampa, FL 33609
Tel. no.: 813-289-3621
Fax no.: 813-289-3622
Email: bob.golden@suretyconsultants.com

EXHIBIT "B"
ALL-STATE LEGAL

We suggest that you forward the documents in our letter of July 25, 2005 directly to Mr. Golden. Due to scheduling conflicts, Mr. Golden is not available to visit the job site until August 19, 2005. He can be there at 8 a.m. During the interval, Mr. Golden will be reviewing the project documents provided by you. Please confirm if the date and time of the job site visit is convenient for your local representative.

We appreciate, as expressed in our August 9, 2005 telephone conversation that the USDA requires that the construction on the project resume without undue delay. To that end, and without getting into the rights and wrongs of the field personnels' conduct, the most

not taken into considera[illegible] in the decision to proceed with the te[illegible]ination. We understand you will be responding to that letter. Again, we urge you to give full weight and consideration to our Principal's position.

If you are not so inclined to rescind the termination, we, without even conducting an investigation of the matter would be willing to arrange for our construction consultant to supervise and coordinate the completion of the project through our Principal. This would avoid the project being delayed and allow a neutral party to interface between the onsite representatives of the USDA and the contractor. We believe this would go along ways to defusing the prior impediments to a constructive working relationship between the two, and achieve the most timely completion of the completion.

We shall be looking forward to hearing from you.

Very truly yours,

MONITOR SURETY MANAGERS, INC.

By: [signature]
Troward G. Wells, Jr.
Surety Claim Attorney

# TAKEOVER AGREEMENT

THIS AGREEMENT (hereinafter referred to as the "AGREEMENT") is made and entered into by and between the United States Department of Agriculture, Agricultural Research Service (hereinafter referred to as the "GOVERNMENT") and Carolina Casualty Insurance Company (hereinafter referred to as the "SURETY") as of the "Effective Date" set out in paragraph 29:

WHEREAS, on October 1, 2003, the GOVERNMENT and Grace & Naeem Uddin, Inc. (hereinafter referred to as the "CONTRACTOR") entered into Contract No. 50-3K15-3-3600, including any amendments, optional items, changes, or modifications thereto, and which is attached hereto and incorporated by reference as Exhibit "A," (hereinafter called the "CONTRACT"), for the construction of a new laboratory facility known as the Subtropical Horticulture Research Center ("SHRC"); and

WHEREAS, as a condition precedent to commencing work under the CONTRACT, the GOVERNMENT, in accordance with the CONTRACT, required the CONTRACTOR to post and the SURETY did post SURETY'S Payment Bond No. 089013, dated October 14, 2003, in the amount of $6,958,615.48; and Performance Bond No. 089013, dated October 14, 2003, in the amount of $6,836,182.00, collectively, the "BONDS," true and correct copies of which are attached hereto as Exhibits "B" and "C," respectively; and

EXHIBIT "C"
ALL-STATE LEGAL

WHEREAS, by letter dated August 2, 2005, a copy of which is attached hereto and incorporated herein by reference as Exhibit "D," the GOVERNMENT has determined that the CONTRACTOR is in default and has terminated for default the right of the CONTRACTOR to proceed under the CONTRACT; and

WHEREAS, the GOVERNMENT thereafter made demand upon the SURETY to fulfill its obligations under the BONDS; and

WHEREAS, the GOVERNMENT desires to effect the completion of the work covered by the CONTRACT in an expeditious manner to avoid the delay and inconvenience of awarding a new contract to complete the work covered by the CONTRACT; and

WHEREAS, as a measure of cooperation with the GOVERNMENT and as a measure to minimize costs, the SURETY is willing and desires to takeover the CONTRACT in accordance with the terms of this AGREEMENT and the requirements, terms, and conditions of the CONTRACT; and

WHEREAS, pursuant to the Performance Bond, the SURETY is willing to cause the work required under the CONTRACT to be completed through the SURETY'S Completing Contractor or Construction Manager in accordance with the provisions of this AGREEMENT and the requirements, terms, and conditions of the CONTRACT provided that in so doing the SURETY will receive the contract balances as hereinafter set forth.

NOW, THEREFORE, in reliance upon the mutual covenants, promises and undertakings set

forth herein and intending to be fully and legally bound, the parties hereto agree as follows:

1) The Surety hereby undertakes and agrees to cause the performance of all work and obligations of the CONTRACTOR under the CONTRACT and any modifications thereto not presently completed or fulfilled, including the correction and repair of any defective work performed by the CONTRACTOR. The SURETY agrees to be bound by the CONTRACT and to perform in accordance with the requirements, terms, and conditions of the CONTRACT. All of the CONTRACTOR'S obligations and liabilities to the GOVERNMENT under the CONTRACT, and under the Bonds of the CONTRACTOR and SURETY, shall remain unimpaired by this AGREEMENT, and the CONTRACTOR shall not be released therefrom.

2) The GOVERNMENT hereby recognizes that the SURETY will takeover the CONTRACT, and the SURETY will be identifying or has identified competitively a construction contractor who is acceptable to the SURETY and the GOVERNMENT, who is ready, willing, and able to perform and complete all of the work required to be performed under the terminated CONTRACT, all in accordance with the requirements, terms, and conditions of the CONTRACT. Except as otherwise provided in this AGREEMENT, the SURETY is entitled to all rights, title and interest of the CONTRACTOR in and to the CONTRACT in all respects as if the SURETY were the original party to the CONTRACT. It is expressly understood and agreed that the GOVERNMENT shall in no way be bound to the Completing Contractor or Construction Manager or to any other contractor by the terms of this AGREEMENT. However, the GOVERNMENT shall recognize the Completing Contractor or Construction Manager as the

SURETY'S agent for the purpose of administering and constructing SHRC and Renovation of Building 63. In the event the Completing Contractor or Construction Manager is unable to perform, SURETY understands that it remains fully liable for any resulting damages to the GOVERNMENT.

3) The SURETY shall be responsible for replacing or correcting any and all defective work in place that was performed by the CONTRACTOR without any equitable adjustment to the CONTRACT price to the extent that the work was not already approved by the GOVERNMENT. In addition, the SURETY shall be responsible, without further charge to the GOVERNMENT, for ensuring the condition, maintenance, and protection of all existing on-site materials and equipment. Any additional costs incurred by the SURETY associated with defective work, existing on-site material and equipment, or any such matters which can be attributed to performance of work by the CONTRACTOR shall be borne by the SURETY, including latent defects.

4) The adjusted Contract price, including all modifications and change orders thereto as of this date is $6,958,615.48 and as of this date payments have been made to CONTRACTOR by the GOVERNMENT in the amount of $3,458,178.56 leaving a contract balance of funds in the amount of $3,500,436.92 which includes $64,852.94 in retainage. The GOVERNMENT has issued ten (10) modifications to the contract totaling $122,433.00.

5) The Government and the Surety agree that there are no unpaid earnings owed to the CONTRACTOR. Notwithstanding the aforesaid, the Government, upon execution of this

AGREEMENT, shall pay to Surety Requisition 17 in the amount of 189,865.24, and upon so doing said sum shall be deducted from the Contract balance.

6) The Surety shall also pay such additional sum as may be required to satisfy outstanding payment obligations to subcontractors and suppliers who have valid Payment Bond claims for work or material provided prior to the termination of the Contractor.

7) In accordance with the terms of the CONTRACT, the GOVERNMENT shall pay direct to the SURETY the unpaid balance of the CONTRACT, plus or minus any approved change order additions or deletions to which the SURETY may become entitled, as well as any amounts to which the CONTRACTOR is already entitled but has not yet been paid; subject, however, to the following conditions and limitations:

a) The unpaid earnings of the CONTRACTOR, including retained percentages and progress estimates for work accomplished before termination, shall be subject to debts due the GOVERNMENT by the CONTRACTOR, except to the extent that such unpaid earnings may be required to permit payment to SURETY of its actual costs and expenses incurred in the completion of the work, exclusive of its payments and obligations under the payment bond given in connection with the CONTRACT.

b) This AGREEMENT shall not waive or release the GOVERNMENT'S right to claim liquidated damages for delays in completion of the work, except to the extent that such delays, if any, may be excused under the provisions of the CONTRACT; and SURETY is likewise

entitled to such additional compensation, equitable adjustment, or time extensions as such is provided under the original Contract Documents.

c) In no event shall SURETY be entitled to be paid any amount in excess of its total expenditures necessarily made in completing the work and discharging its obligations under the CONTRACTOR'S payment bond. Furthermore, payments to the SURETY to reimburse it for discharging its liabilities under the payment bond shall be only on authority of (i) Mutual agreement between the GOVERNMENT, the DEFAULTING CONTRACTOR, and the SURETY, (ii) Determination of the Comptroller General as to the payee and amount, or (iii) Order of a court of competent jurisdiction.

8) The SURETY shall maintain separate records and accounts covering all costs incurred and expenditures made by it in completing the work under the CONTRACT. The SURETY shall make such records and accounts and supporting vouchers available for inspection and verification by the Contracting Officer, the Comptroller General, or other authorized representatives of the GOVERNMENT, until the expiration of three (3) years from the date of final payment under the CONTRACT.

9) The SURETY agrees that nothing herein contained shall be construed as constituting an acceptance by the GOVERNMENT of the work heretofore performed by the CONTRACTOR or as modifying or limiting the liability or obligations of the SURETY to the GOVERNMENT under the BONDS.

10) Subject to Surety's Contractor's rights reserved pursuant paragraph "7" herein, the Surety shall protect and indemnify the Government and hold it harmless from any claims against it by the Contractor or any of its creditors claiming a right to the Contract balances paid or to be paid to the Surety.

11) Subject to paragraph "7" herein, the Surety agrees that its Performance and Payment Bonds numbered 089013 will remain in effect for claims against the Surety for liquidated damages, latent defects and as a consequence of any liens held by Contractor and/or Subcontractors for labor or material costs as required by the FAR that result from completed work performed by the Contractor prior to August 2, 2005.

12) The CONTRACT, Amendments, and all modifications thereto are incorporated into this AGREEMENT. This AGREEMENT contains the entire agreement between the parties and supersedes any and all prior agreements, arrangements, and/or understandings between the parties. The parties agree to address issues pertaining to completion of the CONTRACT work during the course of CONTRACT performance. The Parties agree to act in good faith to promptly and fairly address such issues.

13) This AGREEMENT is the joint product of the parties hereto and shall not be construed more strictly against one party by virtue of said party's participation in the drafting of its terms and conditions. Further, the SURETY and GOVERNMENT warrant that each has the power and authority to execute this AGREEMENT and that this AGREEMENT has been signed by an officer or duly authorized representative of the SURETY and GOVERNMENT.

14) It is further agreed that this AGREEMENT is solely for the benefit of the parties hereto and shall not create any rights in any person not a party hereto, or in any way increase the rights of third persons, or increase the obligations of any party hereto to any third person, or increase the liability or obligations of the Surety under the bonds.

15) All payments and notices to SURETY shall be delivered to SURETY at the following address: .

Monitor Surety Managers, Inc.
325 Columbia Turnpike
Suite 203
Florham Park, NJ 07932

16) Administration and inspection of the project will remain with the GOVERNMENT and its agents/engineers in accordance with the terms of the original CONTRACT. Should the SURETY select a Completing Contractor or Construction Manager to complete the performance of the Contract on behalf of the SURETY, such Completing Contractor or Construction Manager shall prepare and submit on behalf of the SURETY the payment requisitions to Obligee as required under the CONTRACT, and shall be authorized to take such other acts on behalf of the SURETY as may be necessary for the administration and performance of the Contract.

17) Insofar as they comply with the provisions of the CONTRACT and insofar as their title and ownership are vested in the GOVERNMENT as the result of payments made by the GOVERNMENT for progress made by the CONTRACTOR, the GOVERNMENT agrees that all

materials, appliances and pla[illegible] presently on the project site are availa[illegible] to SURETY and its

designated independent contractors without cost for use in the completion of the remainder of the CONTRACT.

18) The GOVERNMENT acknowledges that SURETY, in entering into this AGREEMENT does not acknowledge the validity of the GOVERNMENT'S termination of the CONTRACTOR'S CONTRACT, the assessment of liquidated damages by the GOVERNMENT, or any other action taken by the GOVERNMENT, except as expressly provided herein. Furthermore, in entering into this AGREEMENT, SURETY does not thereby waive, prejudice, or in any way adversely affect any claim that it, as SURETY, or the CONTRACTOR might have against the GOVERNMENT all of which are expressly reserved.

19) The GOVERNMENT agrees that it will give SURETY notification of any problems that occur in the completion of the CONTRACT.

20) SURETY and the GOVERNMENT agree, all prior rights, equitable liens and rights to subrogation that would be the United States', the laborers' or materialmen's or the CONTRACTOR'S under the CONTRACT or at law or equity, as well as SURETY'S own rights dating back to the execution of the performance and payment bonds, including, but not limited to those rights and remedies that may accrue during the completion of the CONTRACT are reserved. No waiver of such rights is agreed to or implied or intended regardless of any provisions of this takeover AGREEMENT to the contrary.

21) Except as modified [illegible] this AGREEMENT, all the terms and c[illegible]ditions of the original CONTRACT shall be and remain the same, and shall remain in full force and effect.

22) With the execution of this AGREEMENT, the SURETY contemplates entering into a Contract with either a Completing Contractor or Construction Manager to complete the work on behalf of the SURETY. The parties contemplate the completion of the work for the new SHRC within 270 calendar days, and completion of Renovation of Building 63 within 105 calendar days, following a Notice to Proceed issued by the GOVERNMENT. The GOVERNMENT hereby grants a time extension: the new completion date will be established based on the new Notice to Proceed date and the 270 calendar days of work to be performed to complete the Subtropical Horticultural Research Center, and 105 calendar days of work to be performed to complete the Renovation of Building 63, both located at the U.S. Department of Agriculture, Agricultural Research Service, Subtropical Horticultural Research Station, Miami, Florida.

23) It is understood and agreed that this AGREEMENT and the specific documents referenced herein constitute the whole of the understanding, discussion and agreements by and between the parties, and the written or oral discussions prior to the effective date hereof shall not in any way vary or alter the terms of this AGREEMENT.

24) This AGREEMENT shall not in any way be amended or modified without the written consent of both the SURETY and the GOVERNMENT.

25) This AGREEMENT shall extend to and be binding upon the parties hereto and their respective successors and assigns.

26) The preamble or recitals set forth above are part of this AGREEMENT. This AGREEMENT may be executed in three original counterparts.

27) The parties hereto have voluntarily executed this AGREEMENT based upon their independent investigations. The provisions of the AGREEMENT shall be applied and interpreted in a manner consistent with one another so as to carry out the purpose and intent of the parties, but if for any reason any provision is unenforceable or invalid, such provisions shall be deemed severed from the AGREEMENT and the remaining provisions shall be carried out with the same force and effect as if the severed portion had not been a part of this AGREEMENT.

28) The Effective Date of this AGREEMENT is the date the AGREEMENT is signed by all parties.

IN WITNESS HERETO, a[illegible]arties to this AGREEMENT have cau[illegible] to be set their hands and seals the day and year indicated.

UNITED STATES DEPARTMENT OF AGRICULTURE

Date Signed: ____________________ By: ______________________________________
Joan M. Baker

Attest: ________________________ Title: Contracting Officer

CAROLINA CASUALTY INSURANCE COMPANY

Date Signed: ____________________ By: ______________
Troward G. Wells, Jr.

Attest: ________________________ Title: Surety Claim Attorney

KNOW ALL MEN BY THESE PRESENTS that whereas the undersigned, hereinafter called Indemnitors, have [illegible] We request [illegible] COMPANY, hereinafter called the Surety, to execute or procure the execution of Bonds, undertakings or recognizances (all of which are hereinafter included within the term "Bond or Bonds") as have [illegible] and such as may hereafter be applied for directly or through an agent, attorney or other representative or required, solely or as [illegible] with others, by any of the Indemnitors or by any person, firm, corporation or association whose name shall, for that purpose, have been furnished to the Surety by any of the Indemnitors, it being understood and agreed that this instrument shall cover all Bonds so applied for and executed, whether or not this Instrument is referred to or mentioned in connection therewith, and whereas, the undersigned understand that the Surety expressly requires the delivery of this Indemnity Agreement as part of the consideration for the execution by the Surety of such Bonds, or for the refraining from canceling said Bonds;

NOW THEREFORE, in consideration of the premises and of the execution or continuance of such Bonds, the Indemnitors for themselves, their heirs, executors, administrators, successors and assigns, do hereby jointly and severally covenant and agree with the Surety, its successors and assigns, as follows:

1. The Indemnitors will pay, when due, all premiums for each of such Bonds in accordance with the Surety's rates in effect on the date such Bond becomes effective, as long as liability thereunder shall continue, and until the Surety is furnished with evidence satisfactory to the Surety of its discharge or release from the bonds, or of all liability by reason thereof.

2. The Indemnitors will exonerate, indemnify, and hold harmless the Surety against any and all claims, demands, liability, loss, cost, damages, fees of attorneys, accountants and consultants, and other expenses which the Surety may sustain or incur by reason of, or in consequence of the execution of such Bonds and any renewal, continuation or successor thereof, including but not limited to sums paid or liabilities incurred in settlement of and expenses paid or incurred in connection with claims, suits or judgments under such Bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid. The Indemnitors will exonerate, indemnify and hold harmless the Surety against any and all claims, demands, liability, loss, damages, fees of attorneys, and other expenses which the Surety may sustain or incur by reasons of or in consequence of reliance upon representations made by the Indemnitors regarding defenses available to Principal and/or Surety to claims made against any such Bonds.

3. To further protect, exonerate and save harmless the Surety, Indemnitors shall pay over to the Surety, its successors and assigns, all sums of money which the Surety shall pay or cause to be paid or may be liable to pay by reason of the execution of such bond or other obligations, or on account of any demands, claims, liabilities, damages, costs, charges and expenses of whatever kind or nature in connection therewith; such payment to be made to the Surety as soon as Surety notifies Indemnitor to deposit such funds with Surety, whether or not the surety shall have paid out such sum or any part thereof or not, and Surety is hereby authorized to use such funds, or any part thereof, in payment or settlement of any such demand, claim, liability, loss, charges, costs and expenses or other obligations Indemnitors may be liable to Surety under the terms of this Agreement. Surety shall have no obligation to invest or otherwise provide interest on such funds paid to Surety by Indemnitor and Surety may commingle the funds with other funds of the Surety. Surety may apply any unused funds as collateral security to any other bond or obligation of the Indemnitor under this agreement.

4. If any such Bond be given in connection with a contract, the Surety in its sole discretion and interest is hereby authorized, but not required, (a) to consent to any change in the contract, its price, or in the plans and specifications relating thereto; (b) to make or guarantee advances or loans for the purposes of the contract without any obligation to see to the application thereof, it being understood that the amount of all such advances or loans shall be conclusively presumed to be a loss hereunder for which the Indemnitors are liable, (c)(i) in the event of any alleged, declared or actual default in the performance of the contract, (ii) or the breach of this Agreement or of any Bond connected therewith, (iii) or the alleged or actual failure to diligently prosecute the work under any contract, (iv) or any failure, delay or inability to pay for labor and material or other indebtedness incurred in connection with the prosecution of the contract, (v) or in the event work has ceased or been suspended on any contract or contracts covered by any said Bonds, (vi) or in the sole opinion of the Surety, the contract funds to be paid are insufficient to pay for the cost of performing the contract: to take possession of the work under the contract and at the expense of the Indemnitors, to complete the contract or cause the same to be completed or to consent to the completion of it, and to take any other action which the Surety may deem expedient including but not limited to a monetary settlement with the Obligee to the Bond. The Surety is authorized to take possession of the work pursuant to subparagraph (c) notwithstanding that an Indemnitor may dispute such default or failure, and in the event that the Surety takes possession of the work as above provided, the Indemnitors hereby release and discharge the Surety, in this connection, from all liability for its actions and omissions.

5. The Indemnitors hereby assign, transfer, pledge and convey to the Surety (effective as of the date of each such Bond but only in the event of default, breach or failure as referred to in preceding Paragraph 4), as collateral security, to secure the obligations hereunder and any other indebtedness and liabilities of the Indemnitors to the Surety, all of their rights under the contracts referred to in such Bond, including their right, title and interest in and to: (1) all subcontracts and Purchase Orders let in connection therewith and such subcontractors' or suppliers' Surety Bonds; (2) all machinery, plant, equipment, tools and materials which shall be upon the site or sites of the work or elsewhere for the purposes of the contracts, including all materials ordered for the contract; (3) any and all sums due or to become due on such contracts, and on all other contracts, bonded or unbonded, in which any or all of the Indemnitors have an interest; and (4) any and all claims and other sums due or to become due on any policy of insurance covering a loss arising out of a contract bonded by Surety; (5) all actions, causes of actions, claims and demands whatsoever which the Principal may have in anyway arising out of or relating to such Bond or contract covered by such Bond.

6. The Surety may at its option file or record this Agreement or any other document executed by any or all of the Indemnitors individually or jointly, in connection with application, issuance or execution of any Bond or Bonds, as a Security Agreement or as part of a financing statement or as notice of its prior interest and assignment under the provisions of the Uniform Commercial Code or any other statute or regulation of any jurisdiction or agency, but that the filing or recording of such document shall be solely at the option of the Surety and that the failure to do so shall not release or impair any of the obligations of the Indemnitors under this Agreement nor diminish any other legal or equitable rights of the Surety. Any copy of this Agreement certified by the Surety to be a true and accurate copy shall be deemed an original for purposes of filing as a financing statement.

7. The Indemnitors agree and hereby expressly declare that all funds due or to become due under any contract covered by [illegible] are Trust Funds, whether in the possession of an Indemnitor or another, for the benefit and payment of all persons to whom [illegible] equal in come obligations in the performance of such contract for which the Surety would be liable under the Bond and for the [illegible] of Surety for any liability or loss it may sustain or incur by reason of or in consequence of the execution of such Bonds. Upon [illegible] from the Surety to an Obligee, Indemnitors hereby authorize and direct the Obligee of any such bond to pay to the Surety any and all funds due or to become due on any contract bonded by Surety, and upon payment of such funds the Obligee is released and discharged from any and all liability to Indemnitors in connection with the payment.

[illegible]



ALL-STATE LEGAL
EXHIBIT
"D"

...demnitors agree and hereby expressly declare that title to all ... rials and supplies ... rendered ... fabricated for any ... by the Bond shall be held in trust for the benefit of the ... of the improvement ... the ... of a Surety.

8. The Surety shall have the exclusive right in its name and in the name of any Indemnitor to decide and determine whether any claim, liability, suit or judgment made or brought against the Surety or the Indemnitors or any one of them shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the Surety's decision thereon ... shall be final and binding upon the Indemnitors. An itemized statement of payments made by the Surety for any of the purposes specified herein sworn to by an officer of the Surety, or the copies of the checks or drafts for such payments, shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety such amounts with interest from the date of payment.

9. The Indemnitors hereby authorize the Surety in its sole discretion to do the following: (a) make or consent to any change in, or issue any substitute for or renewal of, any such Bond, or in any contract referred to in any such bond, and this instrument shall apply to such substituted or changed Bond or renewal. (b) if any such Bond be given in an action or proceeding in any court, to recognize any attorney of record in such action or proceeding for any party therein at the date of the execution of such Bond as the authorized representative of such party until the Surety shall have been fully discharged from liability under such Bond, (c) to take such other actions as the Surety may deem expedient to obtain release from liability from any such Bond.

10. The Indemnitors hereby agree that they shall at all times keep themselves intimately familiar with the financial condition of the Principal on any such bond, as well as the status of all projects bonded by the Surety. The Indemnitors hereby waive notice of the execution of any such Bond or of any act, fact or information coming to the notice or knowledge of the Surety concerning or affecting its rights or liabilities under such Bond or rights or liabilities of the Indemnitors hereunder, notice of all such being hereby expressly waived.

11. If the Surety shall procure any other company or companies to execute or join with it in executing, or to reinsure, any such Bond, this instrument shall inure to the benefit of such other company or companies, its or their successors and assigns, so as to give to it or them a direct right of action against the Indemnitors to enforce this instrument and, in that event, the word "Surety" wherever used herein shall be deemed to include such company or companies, as their respective interests may appear.

12. The liability of the Indemnitors hereunder shall not be affected by the failure of any party to sign any such Bond, nor by the failure of a party to execute this Agreement; nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity or Indemnitor, nor the return or exchange of any collateral that may have been obtained; and if any party signing this instrument is not bound for any reason, this obligation shall still be binding upon each and every other party.

13. Separate suits may be brought on this Agreement against any or all of the undersigned and the bringing of a suit or the recovery of a judgment upon any cause of action shall not prejudice nor bar the bringing of other suits upon other causes of action whether theretofore or thereafter arising. This agreement shall be liberally construed so as to protect, exonerate and indemnify the Surety. The Indemnitors agree the construction, validity and performance of this Agreement shall be governed by and construed pursuant to the laws of the State of New York. The Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution each may have against the other until all obligations to the Surety under this Agreement, at law or in equity, have been satisfied in full. The Surety is hereby expressly authorized to settle any claim based upon this Agreement with any one or more of the undersigned individually, and such settlement or compromise shall not affect the liability of any of the rest of the undersigned.

14. The Indemnitors waive any defense that this instrument was executed subsequent to the date of any such Bond, admitting and covenanting that such Bond was executed pursuant to the Indemnitors' request and in reliance on the Indemnitors' promise to execute this instrument. In the event any part of this Indemnity Agreement shall be void under the law of the place governing its construction hereof, then such part only shall be considered as deleted and the remainder of this Agreement shall remain in full force and effect. The Surety shall have the right to fill in any blanks and to correct any errors in filling in any blanks pertaining to the execution of this Agreement. Wherever used in this instrument the plural term shall include the singular and the singular shall include the plural, as the circumstances require.

15. The Surety, at its option, may decline to execute or participate in or procure the execution of any such Bond. If the Surety shall execute a bid or proposal Bond, or any similar undertaking, it may nevertheless decline to execute any and all Bonds that may be required in connection with any award made on the bid or proposal for which the Bond or undertaking is given, and the Principal shall have the right to procure from another Surety any Bonds that may be required in connection with any award under the bid or proposal for which the Bond or undertaking is given.

16. Whereas, the Indemnitors have a substantial material and beneficial interest in the obtaining of said Bonds on behalf of various related companies, it is, therefore, agreed that this Agreement shall apply to any bonds executed on behalf of any subsidiary, subsidiary of a subsidiary whether direct or indirect, affiliated company or partnership, joint venture or corporation of any Indemnitor now existing or hereafter formed or acquired, and whether partially or wholly owned or controlled, as fully as if the names and signatures of such subsidiaries or affiliates appeared herein as Indemnitors.

17. The Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety or its designee as their Attorney-in-Fact with the right, but not the obligation, to exercise all of the rights of Indemnitors or any of them to make, execute and deliver any and all additional or other assignments, documents or papers, including but not limited to the execution of instruments referred to in Paragraph 5, and the endorsement of checks or other instruments representing payment of contract monies, deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Indemnitors hereby ratify and affirm all acts and actions taken and done by the Surety or its designee as such Attorney-in-Fact.

18. The Indemnitors hereby waive and abandon, so far as their respective obligations under this Agreement are concerned, all rights to claim any property, including the respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any state, territory or possession.

19. The obligations of the Indemnitors hereunder shall be continuous; provided, however, that any one of the Indemnitors may give the Surety not less than 30 days written notice (effective only after receipt) by registered mail of his desire to terminate his future liability under this Agreement but any such notice of termination shall not operate, modify, bar, discharge, limit, affect or impair the liability hereunder on or by reason of any such Bond executed prior to the expiration of such 30 days nor shall such notice affect or impair the continuing liability of any other Indemnitor.

20. The Indemnitors shall furnish to the Surety such information as it may request from time to time concerning the financial condition of the Indemnitors, the status of work under any contract covered by a Bond, the condition of the performance of any such contract, and the payment of obligations incurred in connection therewith. The Surety may at reasonable times and places and from time to time examine and copy the books, records and accounts of the Indemnitors. The Indemnitors ... the Surety ...

Surety to liability, loss, damages, fees of attorneys or other expenses by reason of in consequence of such Bonds.

The Surety is hereby authorized to obtain information concerning the [illegible] of the Indemnitors and any [illegible] [illegible] or among the Indemnitors from any banks, depositories, obligees of the Bond, subcontractors, materialmen, supply houses, credit reporting agencies, other Sureties or other persons, all of whom are hereby expressly authorized to furnish such information to the Surety.

21. If any proceeding is brought against the Surety in which the Surety desires to join any one of the Indemnitors by reason of the undertakings in this Agreement, each of the Indemnitors agrees that he will, upon written notice of the Surety to do so, voluntarily appear in such proceedings and accept service of process and other papers either personally or by an attorney of the undersigned's choice. If any of the undersigned fails upon such notice from the Surety so to appear, such undersigned hereby designates the Secretary of the State or Territory in which proceedings are pending as his agent for the service of process in any such proceedings.

With respect to such action brought by the Surety on this Agreement in a jurisdiction in which one or more of the undersigned reside, are domiciled, are doing business or are found, each of the undersigned who are not in the jurisdiction hereby designates each of the undersigned in such jurisdiction as his agent to receive on his behalf service of process in such action. Notice to or service of process on Indemnitors may also be made by certified mail to the address set forth below or to any change of address which Indemnitors shall have given by written notice to Surety.

22. This writing constitutes the entirety of the Agreement between Indemnitors and Surety regarding the execution of Bonds, handling of claims against such Bonds, and their respective obligations and duties to each other. It may not be added to, changed, or modified orally. No waiver, addition, change or modification shall be effective unless specifically agreed to in writing.

IN TESTIMONY WHEREOF, the Indemnitors, intending to be legally bound hereby, have hereunder set their hands and affixed their seals this 11th day of March, 2003.

Grace & Naeem Uddin, Inc. [Seal]
Name of Corporation/Partnership
By [signature]
Graciela Uddin, President
Type or Print Name and Title
Address: 5532 NW 72nd Ave
Miami, FL 33166
Witness or Attest [signature]
Signature

[Seal]
Name of Corporation/Partnership
By
Type or Print Name and Title
Address:
Witness or Attest
Signature

[Seal]
Name of Corporation/Partnership
By
Type or Print Name and Title
Address:
Witness or Attest
Signature

[Seal]
Name of Corporation/Partnership
By
Type or Print Name and Title
Address:
Witness or Attest
Signature

[signature]
Signature - Individually
Graciela Uddin - 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
Type or Print Name and Social Security Number
Address: 14421 Arlington Place
Davie, FL 33325

[signature]
Signature - Individually
Naeem Uddin - 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
Type or Print Name and Social Security Number
Address: 14421 Arlington Place
Davie, FL 33325

Signature - Individually
Type or Print Name and Social Security Number
Address

Signature - Individually
Type or Print Name and Social Security Number
Address

CORPORATE ACKNOWLEDGMENT

STATE OF Florida ) ss.:
COUNTY OF Miami-Dade

On the 11th day of March, 2003, before me personally appeared Graciela Uddin to me known to be the President of Grace & Haseem Uddin, Inc. the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that the seal affixed is the seal of said corporation and that it was affixed and that said instrument was executed by order of the Board of Directors of said corporation.

Notary Public — Thin Donovan, Commission # CC 979357, Expires Dec. 1, 2004, Bonded Thru Atlantic Bonding Co., Inc.
(Commission expires )

STATE OF ) ss.:
COUNTY OF

On this ___ day of ___, before me personally appeared ___ to me known to be the ___ of ___ the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that the seal affixed is the seal of said corporation and that it was affixed and that said instrument was executed by order of the Board of Directors of said corporation.

Notary Public
(Commission expires )

STATE OF ) ss.:
COUNTY OF

On this ___ day of ___, before me personally appeared ___ to me known to be the ___ of ___ the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that the seal affixed is the seal of said corporation and that it was affixed and that said instrument was executed by order of the Board of Directors of said corporation.

Notary Public
(Commission expires )

STATE OF ) ss.:
COUNTY OF

On this ___ day of ___, before me personally appeared ___ to me known to be the ___ of ___ the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that the seal affixed is the seal of said corporation and that it was affixed and that said instrument was executed by order of the Board of Directors of said corporation.

Notary Public
(Commission expires )

INDIVIDUAL ACKNOWLEDGMENT

STATE OF Florida ) ss.:
COUNTY OF Miami-Dade

On the 11th day of March, 2003, before me personally appeared Graciela Uddin to me known and known to me to be the individual(s) described in and who executed the foregoing agreement and acknowledged that the execution of the same was for the purposes, considerations and uses therein set forth as a free and voluntary act and deed.

Notary Public — Thin Donovan, Commission # CC 979357, Expires Dec. 1, 2004, Bonded Thru Atlantic Bonding Co., Inc.
(Commission expires )

STATE OF Florida ) ss.:
COUNTY OF Miami-Dade

On this 11th day of March, 2003, before me personally appeared Haseem Uddin to me known and known to me to be the individual(s) described in and who executed the foregoing agreement and acknowledged that the execution of the same was for the purposes, considerations and uses therein set forth as a free and voluntary act and deed.

Notary Public — Thin Donovan, Commission # CC 979357, Expires Dec. 1, 2004, Bonded Thru Atlantic Bonding Co., Inc.
(Commission expires )

STATE OF ) ss.:
COUNTY OF

On this ___ day of ___, before me personally appeared ___ to me known and known to me to be the individual(s) described in and who executed the foregoing agreement and acknowledged that the execution of the same was for the purposes, considerations and uses therein set forth as a free and voluntary act and deed.

Notary Public
(Commission expires )

STATE OF ) ss.
COUNTY OF

On this ___ day of ___, before me personally appeared ___ to me known and known to me to be the individual(s) described in and who executed the foregoing agreement and acknowledged that the execution of the same was for the purposes, considerations and uses therein set forth as a free and voluntary act and deed.

Notary Public
(Commission expires )

*0113000145*
11/23/2005
6317312636

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

GRACE & HAEEJ UDDIN, INC.

9070

PAY **** SEVEN THOUSAND TWO HUNDRED NINETY SIX & 86/100 DOLLARS

11/11/05 ******$7,296.86

SURETY & CONSTRUCTION CONSULTANTS, INC.
15490 KNOLL TRAIL, STE.300
DALLAS, TX 75248

1509.01

⑈009070⑈ ⑆267083763⑆ 0093000493⑈ ⑈0000729686⑈

Check Tracer#: 11040593 Acct#: 93000493 Amt: $7,296.86 Ck: 9070 11/23/2005

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
FOR DEPOSIT ONLY
SCC SURETY & CONSTRUCTION CONSULTANTS, INC.
001902040533

11/22/2005

*0113000145* 11/23/2005

Do not endorse or write below this line.

Check Tracer#: 11040593 Acct#: 93000493 Amt: $7,296.86 Ck: 9070 11/23/2005

EXHIBIT
"E"
Composite

ALL-STATE LEGAL

GRACE & NAEEM UDDIN, INC.
5532 N.W. 72nd AVENUE
MIAMI, FL 33166
(305) 887-6237

BankAtlantic
63-5378/2670

9321

00009321

PAY **** THIRTY TWO THOUSAND EIGHT HUNDRED TWENTY EIGHT AND 22/100 DOLLARS

DATE 01/16/06 *****$32,828.22

TO THE ORDER OF: SURETY & CONSTRUCTION CONSULTANTS, INC.
15400 KNOLL TRAIL, STE.300
DALLAS, TX 75248

AUTHORIZED SIGNATURE

1509.01 (2)

⑈009321⑈ ⑆267083763⑆ 0093000493⑈ ⑈0003282822⑈

Check Tracer#: 11152614 Acct#: 93000493 Amt: $32,828.22 Ck: 9321 01/23/2006

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
FOR DEPOSIT ONLY
SCC SURETY & CONSTRUCTION
CONSULTANTS, INC.
001902040533

D=20060123 T=01152614
R=27 B=017 P=06

11326546 94
01232006
0630-0019-9
ENT=0652 TRC=0507 PK=12

BANK OF AMERICA,NA DAL
111000025 01/23/06

9030189585

Check Tracer#: 11152614 Acct#: 93000493 Amt: $32,828.22 Ck: 9321 01/23/2006

GRACE & NAEEM UDDIN, INC.
5532 N.W. 72nd AVENUE
MIAMI, FL 33166
(305) 887-6277

BankAtlantic
63-8376/2670

9270

00009270

PAY **** ELEVEN THOUSAND ONE HUNDRED TWENTY ONE & 54/100 DOLLARS

12/16/05 *****$11,121.54

TO THE ORDER OF: SURETY & CONSTRUCTION CONSULTANTS, INC.
15400 KNOLL TRAIL, STE. 300
DALLAS, TX 75248

AUTHORIZED SIGNATURE

1509.01

⑈009270⑈ ⑆267083763⑆ 0093000493⑈ ⑈0001112154⑈

Check Tracer#: 12109730 Acct#: 93000493 Amt: $11,121.54 Ck: 9270 01/09/2006

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
FOR DEPOSIT ONLY
SCC SURETY & CONSTRUCTION
CONSULTANTS, INC.
001902040533

1034962286
01092006
0630-0019-9
ENT=2153 TRC=2222 PK=12

8230914405

Check Tracer#: 12109730 Acct#: 93000493 Amt: $11,121.54 Ck: 9270 01/09/2006

061000146
09/13/2006
6610273623

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

GRACE & HATIM UDDIN, INC.

10157

Pay: ************four thousand seven hundred eighty-four dollars and 46 cents

September 6, 2006 $******4,784.46

SURETY & CONSTRUCTION CONSULTANTS, INC.
15400 KNOLL TRAIL, SUITE 300
DALLAS, TX 75248

1509.01

⑈010157⑈ ⑆267083763⑆ 0093000493⑈ /0000478446/

⑈010157⑈ ⑆267083763⑆ 0093000493⑈ /0000478446/

Check Tracer#: 11040069 Acct#: 93000493 Amt: $4,784.46 Ck: 10157 09/13/2006

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
FOR DEPOSIT ONLY
SURETY & CONSTRUCTION
CONSULTANTS, INC.

061000146 09/13/2006 6610273623

0233013970
09132006
0630-00
CNT=1555

[Do not endorse or write below this line.]

Check Tracer#: 11040069 Acct#: 93000493 Amt: $4,784.46 Ck: 10157 09/13/2006

GRACE & NAEEM UDDIN, INC.
5532 N.W. 72nd AVENUE
MIAMI, FL 33166
(305) 221-6221

BankAtlantic
63-537/2670

9451

00009451

PAY **** FOUR THOUSAND SEVEN HUNDRED FORTY THREE & 50/100 DOLLARS AMOUNT

02/16/06 ******$4,743.50

TO THE ORDER OF: SURETY & CONSTRUCTION CONSULTANTS, INC.
15400 KNOLL TRAIL, STE. 300
DALLAS, TX 75248

AUTHORIZED SIGNATURE

1509.01

⑈009451⑈ ⑆267083763⑆ 009300049 3⑈ ⑈0000474350⑈

Check Tracer#: 11127769 Acct#: 93000493 Amt: $4,743.50 Ck: 9451 02/27/2006

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
FOR DEPOSIT ONLY
SCC SURETY & CONSTRUCTION
CONSULTANTS, INC.
001592040533

1 2 5 4   9 5 9 1 6

FEB 24 06

0723405393
02272006
0630-0019-9
CNT=0956 TRC=1287 PK=12

930378724

Check Tracer#: 11127769 Acct#: 93000493 Amt: $4,743.50 Ck: 9451 02/27/2006

061000146
03/28/2006
6615513977

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

GRACE & NAEEM UDDIN, INC.

9497

PAY **** TWO THOUSAND NINE HUNDRED FIFTY EIGHT & 31/100 DOLLARS

03/16/06 ******$2,958.31

TO THE ORDER OF SURETY & CONSTRUCTION CONSULTANTS, INC.
15400 KNOLL TRAIL, STE.300
DALLAS, TX 75248

1509.01

⑈009497⑈ ⑆267083763⑆ 0093000493⑈ ⑈0000295831⑈

Check Tracer#: 12051646 Acct#: 93000493 Amt: $2,958.31 Ck: 9497 03/28/2006

D=20060322 I=012051
R=10 B=023 F=00

01317333057
03282006
0630-0019-9
ENT=0084 TRC=052

8230783529

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
FOR DEPOSIT ONLY
SCC SURETY & CONSTRUCTION
CONSULTANTS, INC.

061000146 03/28/2006

(Do not endorse or write below this line.)

Check Tracer#: 12051646 Acct#: 93000493 Amt: $2,958.31 Ck: 9497 03/28/2006

9644

GRACE & NAEEM UDDIN, INC.
5532 N.W. 72ND AVENUE
MIAMI, FL 33166
(305) 887-6227

BankAtlantic
63-8376/2670

00009643

**** THREE THOUSAND SEVEN HUNDRED SIXTY SEVEN & 01/100 DOLLARS

PAY

04/28/06 ******$3,767.01

TO THE ORDER OF
SURETY & CONSTRUCTION
CONSULTANTS, INC.
15400 KNOLL TRAIL, STE.300
DALLAS, TX 75248

AUTHORIZED SIGNATURE

509.01

⑈009644⑈ ⑆267083763⑆ 0093000493⑈ ⑈0000376701⑈

Check Tracer#: 12095278 Acct#: 93000493 Amt: $3,767.01 Ck: 9644 05/01/2006

D=20060501 T=012095278
R=28 B=016 P=00

3120230112
05022006
0620-0019-5
ENT=0592 TRC=1008 PK=12

BANK OF AMERICA,NA DAL
111000025 1335 99 834
04/29/06
823002375 2

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
FOR DEPOSIT ONLY
SCC SURETY & CONSTRUCTION
CONSULTANTS, INC.
001902040533

Check Tracer#: 12095278 Acct#: 93000493 Amt: $3,767.01 Ck: 9644 05/01/2006

9706

GRACE & NAEEM UDDIN, INC.
5532 N.W. 72ND AVENUE
MIAMI, FL 33166
(305) 887-6727

BankAtlantic
63-8375/2670

00009706

**** ONE THOUSAND NINE HUNDRED SIXTY TWO & 88/100 DOLLARS

PAY

DATE 05/12/06 AMOUNT ******$1,962.88

TO THE ORDER OF
SURETY & CONSTRUCTION
CONSULTANTS, INC.
15400 KNOLL TRAIL, STE.300
DALLAS, TX 75248

AUTHORIZED SIGNATURE

1509.01

⑈009706⑈ ⑆267083763⑆ 0093000493⑈ ⑈0000196288⑈

Check Tracer#: 12103136 Acct#: 93000493 Amt: $1,962.88 Ck: 9706 05/30/2006

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
FOR DEPOSIT ONLY
SCC SURETY & CONSTRUCTION
CONSULTANTS, INC.
001902040533

R=31 0226705088
05302006
0630-0019-9
ENT=0013 TRC=2495 PK=12

8730979816

Check Tracer#: 12103136 Acct#: 93000493 Amt: $1,962.88 Ck: 9706 05/30/2006

9816

GRACE & NAEEM UDDIN, INC.
5522 N.W. 72ND AVENUE
MIAMI, FL 33166
(305) 887-6727

BankAtlantic

53-8376/2670

9816

**** THREE THOUSAND EIGHT HUNDRED NINETY TWO & 28/100 DOLLARS

PAY

| DATE | AMOUNT |
|---|---|
| 06/14/06 | ******$3,892.28 |

TO THE ORDER OF
SURETY & CONSTRUCTION
CONSULTANTS, INC.
15400 KNOLL TRAIL, STE. 300
DALLAS, TX 75248

AUTHORIZED SIGNATURE

1505.01

⑈009816⑈ ⑆267083763⑆ 0093000493⑈ ⑈0000389228⑈

Check Tracer#: 11081926 Acct#: 93000493 Amt: $3,892.28 Ck: 9816 06/26/2006

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
FOR DEPOSIT ONLY
SCC SURETY & CONSTRUCTION
CONSULTANTS, INC.
001902040533

0636... 11081926
06262006
0630 0019
ENT=1966 TRC=1993 PR=12

BANK OF AMERICA ...
06/23/06

8730313333

Check Tracer#: 11081926 Acct#: 93000493 Amt: $3,892.28 Ck: 9816 06/26/2006

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

GRACE & HAEEM UDGIN, INC.

10349

Pay: ****Seventeen thousand six dollars and 98 cents

October 27, 2006 $*****17,006.98

SURETY & CONSTRUCTION CONSULTANTS, INC.
15400 KNOLL TRAIL, SUITE 300
DALLAS, TX 75248

⑈010349⑈ ⑆267083783⑆ 0093000493⑈ ⑉0001700698⑉

Check Tracer#: 12047571 Acct#: 93000493 Amt: $17,006.98 Ck: 10349 11/14/2006

D=20061114 T=01204719 R=020 B=017 P=00

PAY TO THE ORDER OF BANK OF AMERICA, N.A. FOR DEPOSIT ONLY SCC SURETY & CONSTRUCTION CONSULTANTS, INC.

[Do not endorse or write below this line.]

Check Tracer#: 12047571 Acct#: 93000493 Amt: $17,006.98 Ck: 10349 11/14/2006

*061000346*
01/03/2007
6616712866

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

01/02/2007 C1110000255 0910312245

GRACE & NAEEM UDDIN, INC.

10584

Pay: **************Five thousand three hundred fifty-eight dollars and 34 cents

SURETY & CONSTRUCTION CONSULTANTS, INC.
11300 KNOLL TRAIL, SUITE 300
DALLAS, TX 75248

December 12, 2006 $*******5,358.34

1509.11(c) ⑈010584⑈ ⑆267083763⑆ 0093000493⑈ ⑈0000535834⑈

⑈010584⑈ ⑆267083763⑆ 0093000493⑈ ⑈0000535834⑈

Ck: 10584 - $5,358.34 - 01/03/2007

*061000146*
01/30/2007
4413706404

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

01/29/2007

GRACE & NAECM UDDHI, INC.

10661

Pay: ************Seven thousand two hundred eighty-seven dollars and 43 cents

SURETY & CONSTRUCTION
CONSULTANTS, INC.
P.O. BOX 701195
DALLAS, TX 75370-1195

January 1?, 2007

$*******7,2?7.43

1515.01

⑈010661⑈ ⑆267083763⑆ 0093000493⑈ ⑈0000728743⑈

Ck: 10661 - $7,287.43 - 01/30/2007

02/27/2007
1115434470

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

GRACE & NASEEM UDDIN, INC.

10730

Pay: ********************Ten thousand seven hundred one dollars and 62 cents

February 5, 2007 $*****10,701.62

SURETY & CONSTRUCTION CONSULTANTS, INC.
P.O. BOX 701133
DALLAS, TX 75370-1133

1509.01

⑈010730⑈ ⑆267083763⑆ 0093000493⑈ ⑈0001070162⑈

Ck; 10730 - $10,701.62 - 02/27/2007

*061000146*
03/15/2007
6613726207

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

03/14/2007
C111000025 0810380605

GRACE & HAEEM UDDIN, INC.

10779

Pay ****************Nine thousand six hundred eighty-six dollars and 90 cents

March 2007 $*******9,686.90

SURETY & CONSTRUCTION CONSULTANTS, INC.
P.O. BOX 701139
DALLAS, TX 75370-1139

1509.01

⑈010779⑈ ⑆267083763⑆ 0093000493⑈ ⑈0000968690⑈

Ck: 10779 - $9,686.90 - 03/15/2007

*0L3000146*
04/20/2007
6119961977L

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

04/19/2007

10886

GRACE & NAECM UDDIN, INC.

Pay: ***********Eleven thousand five hundred thirty-eight dollars and 68 cents

April 5, 2007

$*****11,538.68

SURETY & CONSTRUCTION CONSULTANTS, INC.
P.O. BOX 701499
DALLAS, TX 75370-1499

⑈010886⑈ ⑆026708376⑆ 007300015938⑈ ⑈0001153868⑈

Ck: 10886 - $11,538.68 - 04/20/2007

•0610001496•
05/21/2007
6918789573

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

C1110000253 05/18/2007
0903097452

10977

GRACE & HALEEM UDDIN, INC.

Pay: ************thirteen thousand nine hundred sixty-nine dollars and 76 cents

May 8, 2007 $******13,969.76

SURETY & CONSTRUCTION CONSULTANTS, INC.
P.O. BOX 701193
DALLAS, TX 75370-1199

1505.01 ⑈010977⑈ ⑆126708376⑆ 0093000493⑈ ⑈0001396976⑈

⑈010977⑈ ⑆126708376⑆ 0093000493⑈ ⑈0001396976⑈

Ck: 10977 - $13,969.76 - 05/21/2007

*0L3000146*
06/14/2007
L314375350

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

C111000025 06/13/2007
091302946 93

GRACE & NAEEM UDDIN, INC.

11064

Pay: ***************Six thousand three hundred ninety-six dollars and 88 cents

June 5, 2007 $*******6,396.88

SURETY & CONSTRUCTION CONSULTANTS, INC.
P.O. BOX 701497
DALLAS, TX 75370-1497

1505.01

⑈011064⑈ ⑆267083763⑆ 0093000493⑈ ⑈0000639688⑈

⑈011064⑈ ⑆267083763⑆ 0093000493⑈ ⑈0000639688⑈

Ck: 11064 - $6,396.88 - 06/14/2007

GRACE & NASSEM LEDING, INC.

PAY

**** ONE HUNDRED TWENTY NINE THOUSAND THREE HUNDRED FIFTY & 00/100 DOLLARS

CAROLINA CASUALTY INSURANCE CO.

⑈0094?2⑈ ⑆026708376⑆ 0093000493⑈ ⑈0012935000⑈

Check Tracer#: 12053707 Acct#: 93000493 Amt: $129,350.00 Ck: 9422 03/01/2006

Check Tracer#: 12053707 Acct#: 93000493 Amt: $129,350.00 Ck: 9422 03/01/2006

GRACE & NAEEM UDDIN, INC.

0193

A2 GROUP, INC.
5001 S.W. 74TH COURT
SUITE 103
MIAMI, FL
33155

| | | | | |
|---|---|---|---|---|
| 0322/#62,63,T&M-01 | 02/27 | 89260.89 | 0.00 | 89260.89 |
| | | | TOTAL= | $89,260.89 |

03/16/06

193

GRACE & NAEEM UDDIN, INC.
5532 NW 72nd AVE.
MIAMI, FL 33166
(305) 887-6227

WASHINGTON MUTUAL BANK, F.A.
MIAMI SPRINGS, FL 33166
63-8413/2670

0193

193

**** EIGHTY NINE THOUSAND TWO HUNDRED SIXTY & 89/100 DOLLARS

| DATE | AMOUNT |
|---|---|
| 03/16/06 | *****$89,260.89 |

PAY TO THE ORDER OF:

A2 GROUP, INC.
5001 S.W. 74TH COURT
SUITE 103
MIAMI, FL 33155

AUTHORIZED SIGNATURE

Security features. Details on back.

⑈000193⑈ ⑆267084131⑆177⑈855639⑈1⑈

06/20/2006
5317524336

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

GRACE & NAEEM UDDIN, INC.

9818

**** THREE HUNDRED TWELVE THOUSAND TWO HUNDRED SIX & 74/100 DOLLARS

06/15/06 ****$312,206.74

CAROLINA CASUALTY INSURANCE CO.

⑈009818⑈ ⑆267083763⑆ 0093000493⑈

⑈009818⑈ ⑆267083763⑆ 0093000493⑈ ⑈0031220674⑈

Check Tracer#: 12037882 Acct#: 93000493 Amt: $312,206.74 Ck: 9818 06/20/2006

Pay for deposit only
BERKLEY SURETY GROUP

JUN 19 2006

D=20060620 T=0120378
R=14 B=217 P=86
023360405
06202006
0630-0019-9
EXT=2441 TRC=244 PK=12

Do not endorse or write below this line

Check Tracer#: 12037882 Acct#: 93000493 Amt: $312,206.74 Ck: 9818 06/20/2006

06100001 41
12/01/2006
6211761515

This is a LEGAL COPY of your check. You can use it the same way you would use the original check

GRACE & NAEEM UDDIN, INC.

10489

Pay: **Two hundred ninety thousand eight hundred nineteen dollars and 90 cents

November 28, 2006 $****290,819.90

CAROLINA CASUALTY INSURANCE CO
375 COLUMBIA TURNPIKE
SUITE 203
FLORHAM PARK, NJ 07932

⑈010489⑈ ⑆267083763⑆ 0093000493⑈

⑈010489⑈ ⑆267083763⑆ 0093000493⑈ ⑈0029081990⑈

Check Tracer#: 12029795 Acct#: 93000493 Amt: $290,819.90 Ck: 10489 12/01/200

D=20061201 T=012629
R=027 B=082 P=06

PAY TO THE ORDER OF
BERKLEY SURETY GROUP
FOR DEPOSIT ONLY
BERKLEY SURETY GROUP

NOV 30 2006

Key Bank of Maine

021305001 12/01/2006
6211761515

Do not endorse or write below this line.

Check Tracer#: 12029795 Acct#: 93000493 Amt: $290,819.90 Ck: 10489 12/01/200

11498

GRACE & NAEEM UDDIN, INC. 9-14-07 11498

BERKLEY REGIONAL INSURANCE CO.

| | | | | | |
|---|---|---|---|---|---|
| DOC.#ATR-005 | 9-14-07 | 0322 | SUBT.HORT.RES.CTR | 350000.00 | 350000.00 |
| | | | | 350000.00 | 350000.00 |

11498

GRACE & NAEEM UDDIN, INC.
5532 N.W. 72ND AVENUE
MIAMI, FL 33166
(305) 887-6227

BankAtlantic

63-83/6/2670

PAY: ***************************Three hundred fifty thousand dollars and no cents

DATE September 14, 2007 AMOUNT $****350,000.00

TO THE ORDER OF
BERKLEY REGIONAL INSURANCE CO.
325 COLUMBIA TURNPIKE
SUITE 203
FLORHAM PARK, NJ 07932

⑈011498⑈ ⑆267083763⑆ 0093000493⑈

GRACE & NAEEM UDDIN, INC. 11621

BERKLEY REGIONAL INSURANCE CO. 10-11-07 11621

| | | | |
|---|---|---|---|
| #ATR-006 | 10-11-07 0322 USDA SUB.TROP.RES | 350000.00 | 350000.00 |
| | | 350000.00 | 350000.00 |

11621

GRACE & NAEEM UDDIN, INC.
5532 N.W. 72ND AVENUE
MIAMI, FL 33166
(305) 887-6227

BANKATLANTIC
BRICKELL OFFICE #1115
MIAMI, FL 33131

63-8376-2670

Security features. Details on back.

Pay: ************************Three hundred fifty thousand dollars and no cents
PAY

DATE October 11, 2007

AMOUNT $****350,000.00

TO THE ORDER OF
BERKLEY REGIONAL INSURANCE CO.
325 COLUMBIA TURNPIKE
SUITE 203
FLORHAM PARK, NJ 07932

AUTHORIZED SIGNATURE

⑈011621⑈ ⑆267083763⑆ 0093000493⑈

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ms. REGINA M. HERCHAK, CO.
USDA, ARS, AFM
FACILITIES DIVISION
5601 SUNNYSIDE AVE.
MAIL STOP 5124
BELTSVILLE, MD 20705

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature X [signature] ☐ Agent ☐ Addressee

B. Received by (Printed Name) [handwritten] C. Date of Delivery 10/15/07

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☑ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label) 7004 2890 0000 9131 3083

PS Form 3811, February 2004 Domestic Return Receipt 102595-02-M-1540

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

7004 2890 0000 9131 3083

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To REGINA M. HERCHAK USDA
Street, Apt. No.; or PO Box No. 5601 SUNNYSIDE AVE MAIL # 5124
City, State, ZIP+4 Beltsville, MD 20705